So a posting counsel has not arrived. The counsel will give you the option of submitting the case on the briefs, or if you'd like to argue, we will give you the opportunity since you sat here. I would appreciate the opportunity to address the court. Please do. Have you heard anything from a posting counsel at all? I have not. Did you wish for me to make a phone call or attempt a phone call? No, that's not your responsibility. Thank you. We were just wondering if maybe you had heard something. I hadn't, but I am aware that the center that he works for, I believe, is located in this building. But I believe he lives off-island on Maui. We'll proceed for now. All right. This case before this court actually stems from an administrative proceeding on an IDEA case, actually two separate administrative proceedings. That went up on a joint appeal to the United States District Court. Those two administrative decisions were affirmed by the District Court and has been submitted by the plaintiff to this court seeking reversal of both decisions. I would like to inform the court that there is also a kind of a companion case that does involve the same parties that is pending before the United States District Court involving Act 129, which is in question in the 067 proceeding. Are you counsel for that case as well? I am. So why did the District Court stay ruling on that issue in this case? My understanding is the court thought that there was a chance that this court would actually issue findings and conclusions that might assist the court in either dispensing of some of the issues that are pending in that proceeding. Perhaps if this court were to make findings relating to Act 129 and its appropriateness and legality and that sort of thing. If this court did elect to make findings in that regard. Also, there are factual issues that were litigated in the 067 administrative proceeding where basically the parties are trying to determine who is at fault for the withholding of payment pursuant to Act 129. And should this court actually make findings against any one party, that might assist the United States District Court in the civil proceeding that is still pending. All right. Now, it seems to me the primary issue in this case, putting aside this preemption business, is whether or not you, the state, had the right to stop payments. Right? Now, tell me why. There was a state put order, right? There was. Now, and the state put, was that Loveland, wasn't it? It was. All right. And the payments you were making were to Loveland. Correct. Now, in light of the state put order, tell me why the state was authorized to stop payments. What transpired in the legislature in 2011 in the state of Hawaii was a recognition of the fact that several of the private entities that service individuals with disabilities were essentially withholding information and not allowing the Department of Education to exercise its federally mandated required duty to monitor these students in these private facilities. The legislature took on this task of issuing law that actually required these private facilities to collaborate with the Department of Education to facilitate and allow monitoring of the students that the department was paying for to attend these private facilities. The legislature actually added the provision regarding a withholding of payment for private institutions that actually offended and did not facilitate and actually hindered the department's ability to monitor. They inserted the withholding of payment provision, which actually requires the department to withhold payment in the event of... Is this under that Act 129? Yes, it is. I know. Have other payments been withheld, too? I'm sorry? Have other payments been withheld except for this student, FK? Yes, they have. Is it a whole lot of them, a whole bunch of them? I wouldn't say they're a bunch of them. Ever since FK went before the court, the department has been shy in using the statute, codified it. Did Judge Kaye issue a preliminary injunction or something like that? In FK, yes, Your Honor. Is it still in effect? It still is. Well, no wonder they would be shy. So payments have been made on behalf of or to the provider for FK? They have, Your Honor. At this juncture, the department has paid just under $680,000 to maintain FK's placement at Loveland since the administrative proceeding in the 126 case was filed on June 2, 2011. But is the issue of Act 129 before us in this case? It's my position, Your Honor, that it is not. What's before this court currently is the review of the administrative judge reasoning in determining that he didn't have the jurisdiction to determine the legalities of whether or not Act 129 offended federal law in terms of state put, whether there was a preemption issue. What he believed he was tasked with was to determine whether or not by the withholding of payments there was a result in a unilateral placement by the cutting off of payments. And he determined that there was not such a unilateral change in placement by the withholding of funds. That issue went up on appeal. He's, in effect, the district court has saved the state, the school district on one level, because if the payments weren't made, they were made pursuant to the primary injunction. If the payments weren't made, then it seems pretty plain that the state would not be providing the free, appropriate public education, because it would be expecting the education to be paid for by either the family or the school. I believe that's partially correct, Your Honor. However, in my experience in working in these cases in this jurisdiction, Loveland has held on to children where payment has not been made, either because Well, that doesn't change things, because the state's not providing a free education. It's impiding upon the charity of somebody else. But, I mean, on one level, the 800-pound gorilla is that preliminary injunction lawsuit, the separate one where your position is not before us because it's still sitting at the district court. That's not part of this appeal. But that's casting a dark shadow over everything. I'm not sure how we're supposed to address issues in these cases. I guess we can on one level and say that because of the preliminary injunction, payments have been made. So if we limit ourselves to the hearing officer determination, we'll answer a question, but we don't answer the big question. And on the big question, I'm just not for the first time sort of flabbergasted by what the legislature thinks it's doing in providing for the cessation of payments, because the state plainly has the obligation to provide. I'm not saying the state doesn't have responsibility and authority to monitor and supervise under some circumstances that may lead to the cutting off of payments. But to the extent there's communications to be done, it looks to me like Act 29 is sort of a non-starter with regard to the problem of federal supremacy here. How can the state decide, well, we're not going to pay, period, if in fact the federal statute requires the state to provide the school district to provide a free appropriate public education? I believe when Act 129 was presented to the legislature, it was designed to address a prevailing problem that the department was having with determining the appropriateness of the services that were being provided by these private institutions. Several jurisdictions around the country have different requirements that are placed legally on these private institutions that receive state funds for students to be serviced there for special education needs. There are licensing requirements. Some states actually have a list of facilities, and if you're not on the list, you cannot be funded by the state in order for a student to receive services there. Unfortunately, in the state of Hawaii, we don't have those mechanisms in place, and I believe the legislature in 2011 came up with Act 129 thinking that this was a good start and at least trying to induce on the part of these private facilities some level of cooperation and collaboration. Otherwise, there is this inherent expectation placed on the Department of Education annually by federal and state law to develop an academic program for all of these students when there is no contact allowed, where there is no records provided, where there are no assessments provided, where their ability to conduct assessments of these students is hindered. It's nearly impossible to develop a program for these students when you have a private facility who's playing games with the department saying, good luck making a program, we're not going to give you any information, we're not going to give you any access to the student, but I hope you are successful in developing an appropriate program. The legislature in recognition of this, and this is mentioned in the commentary to the law that's codified at 302A443F, that it recognized that this was just a problem that they were unsure how to correct it, and this basically was a first step. Quite honestly, and the district educational specialist, Dr. Aletha Sutton, who actually made the decision to withhold payment after four months of, we're not going to give you anything, we're not going to allow you access to the child, she testified that she thought once she used Act 129 as a threat to withhold payment, if you don't allow us access or information, she was certain that they would allow it. And they did, it seemed, but it was actually colored in a sense that we give you today, tomorrow, and a couple of days from now to come in, we give you this information by mail over the winter break period when we know you're not going to receive it, come in on those days and you can observe the child. Well, when they finally got the correspondence allowing coming in and getting the information and observing the child, they jumped on it and said, we didn't get the dates, I'm sorry, but we'd like to come in. When they finally went in to conduct an observation, they were turned away, again. They were told, you don't have the authority to be here, now we're requiring a different kind of consent form. But they had already allowed it. So it's becoming just a game with these private facilities, and Act 129 was a first step to try and bridge that gap and force some level of collaboration. All right, now let me ask this question. Under Act 129, to the extent it's been in effect, and under whatever action Judge Kaye has taken, what is the current status now of the case here, this controversy between the Department of Education and FK? What remains of that controversy? Have you paid all the back payments to Loveland on his behalf? Yes, her, yes. So you know what else he wants? I believe what is actually before the court is the review of the administrative proceeding. Should the court affirm the administrative proceedings, albeit the district court as well, essentially what that would do is that would change FK's placement to the placement that was offered in the IEP, which is her DOE school. How old is he now? Sixteen. She's 16. He's 16? She, yes, 16. So what is his placement now? The placement right now is still because of stay put at Loveland. Because of the stay put. Because of the stay put. Yes, Your Honor. Now, is there a plan that's been agreed to between the parents and him and the state as to this current year? The current year, no. The department has offered since 2011, 12, 13, 14. It was King Intermediate, wasn't it? It was at the time. The IEP in question for this proceeding is the February 28, 2011 IEP. There has been an annual IEP issued every year since then. The placement that's been offered by the department has been the DOE school. Well, my question is, is there one for this year? Yes. And where is that? I believe it's at Castle High School. Has that been agreed to by everybody? No, because FK is in stay put. Basically, the department is engaging in this creation of a program annually every year with whatever information it has. And basically, FK remains at Loveland because of stay put. So, if we were to affirm the district court decision and the hearing officer decision, where would that leave the proceedings? Would the student then have to challenge the plan that puts her at Castle High School? How would all of this work procedurally? Ordinarily, despite the fact that a student is in stay put, annually there are filings. For whatever reason, in this case, there were no subsequent filings. We have three IEPs, I believe, now that have not been challenged. Unchallenged. Correct. And so, if we were to agree with the hearing officer and the district court that the public school placement was appropriate, she would be taken out of Loveland and put into a public school? Is that what would happen? I believe so. Or the school district would be justified, at least for purposes of that appeal, in not paying anymore because the stay put provision would be lifted. Correct. And then you're just back to the 129 issue, right? Correct. In working with Dr. Sutton, she has transitioned students out of private facilities back to their DOE homeschools. She always does it by way of some sort of transition plan. Clearly, FK would be needing some sort of a transition period to move from Loveland back to her DOE homeschool. Obviously, that wouldn't be required by law. Transition plans are actually required only for post-secondary transitions. However, that is the common practice of the Department of Education. Would that make the other lawsuit moot? I believe, and I can't speak too much for Mr. Bassett, but I believe what he's trying to do is institute a permanent injunction on Act 129, not necessarily just for FK, but for all students. And wouldn't the issue of attorney's fees still be lurking over all of this? Well, if we prevail, there would be no attorney's fees owed. We have one at every stage of this litigation up until this court. Assuming that we prevail here, there would be no issue of attorney's fees pending for this proceeding. The 120, well, the stay put. Didn't the stay put order give them victory of sorts? It did. Unfortunately, or fortunately, depending on how you look at it, it does. And I understand that money is not supposed to be an overarching consideration here, but when I as a taxpayer look at the $680,000 that has been paid on a case that I won, I have a hard time with that. But that's the design of the federal law. Stay put. That's what it is. We have never actually undertaken an action to recoup those monies or somehow engage in that sort of thing. So that's not an issue. What's the tuition a year for a loved one? Right now, at the time of this case, $260,000. A year? Yes, ma'am. Which is part of the reason, too, that when I have my clients going in and actually on the off chance they actually get to do an observation, as Brendan Ahern was able to do with regard to FK, and he reports to me what he saw, and he's talking about a 99-cent Walmart workbook that's yellowed through and the spine is worn. I'm thinking, what's it for? If you don't have a valid, certified speech pathologist working with this student, if you don't have a licensed occupational therapist, if you don't have a licensed special education teacher working with this student, what exactly is the department paying for? But if the state act is preempted under the IDEA, what monitoring opportunities does the state have? It would be extremely difficult to do. I don't know. I mean, in the past, we tried to cite to the Hawaii administrative rules, federal law, in an effort to try and coerce some collaboration on the part of Loveland to allow monitoring, to allow an interchange and exchange of information, mostly for program development, but also just to ensure, is the curriculum that this child is receiving, if any, is it appropriate for her needs, highly specialized needs? When you talk about this student, FK, she has highly specialized needs. And when you look at the team of experts that are actually tasked with developing her program in the Windward District on this island, you're talking about the best that the department has. And maybe that's something I shouldn't say because I represent the entire department, but it doesn't get any better than the Windward District. But the parents apparently are satisfied with the placement and they're fighting to keep their child there. Quite honestly, the read I got from the parent in this case is that she's somehow just developed a sense of trust with, you don't grumble at me when my child doesn't come to school. You don't grumble at me when my child comes late if she comes to school. You don't mind that she doesn't exercise hygiene. You don't complain about any of those things. Quite frankly, I think it came down to that. This student was allowed to get on the bus that the department pays for to take her to Loveland every day, just rolling out of bed. No hygiene practice. Difficult to wake up in the morning to get to school. And we have experts who are prepared to work with the parent in the home. We'd love to work with you on getting her up in the morning, working through a hygiene routine in the home to find out why is she engaging in this behavior. Because it's not that she's beyond learning. She's clearly not beyond learning. But somebody needs to work on those skills with her. And that's what the department was wanting to do with FK and has been prohibited from doing since 2008. All right. Thank you, Counsel. Any additional questions? All right. The case just argued is submitted for decision by the court at this time. Can I interject for just a second? Who are you? I'm Jennifer Patricio. I work with Mr. Bassett. Are you an attorney? Yes. All right. So where is Mr. Bassett? Unfortunately, I just discovered about ten minutes ago that there was something wrong with his flight. He was in Maui. And I'm so sorry. I found out five minutes ago. And he has asked me to make an appearance for him asking for continuance so that he can argue that side of the case. We've already heard argument on the case. If we decide we need additional argument, we will set something by telephone. I'm so sorry. I just discovered that he's still in Maui. All right. We appreciate that. If we decide that we need additional argument, we will set up a teleconference so that he'll have an opportunity to be heard. All right. Thank you. Thank you. All right. We will defer submission of this case pending conference by the judges on the panel. We stand in recess until 9.30 a.m. tomorrow morning at the University of Hawaii, Las Vegas. All rise. All rise. Yes. Yes. Yes. Yes.
judges: Tashima, Rawlinson, Clifton